## MILLER v. WHITE et al.   (No. 6731.)

(Court of Civil Appeals of Texas. Austin. May 21, 1924. Rehearing Denied June 18, 1924.)

1. **Chattel mortgages** ⟺117—**Mortgage of crops to secure "current" installments of debt held to cover 1913 crop for payment of debt due Jan. 1, 1914, and Jan. 1, 1915; "current year."**

A chattel mortgage covering all the cotton grown on premises to secure the payment of current installments of interest and principal of notes given for the land, covered a crop raised in 1913 to pay notes due Jan. 1, 1914, and Jan. 1, 1915; "current" meaning running, moving, following, passing, present in its course, as the "current year" or month; the year running, passing, current on its progress, and is ordinarily the calendar year, unless the context shows a different intention (citing Words and Phrases, First Series, "Current—Current Year").

2. **Mortgages** ⟺199(4)—**How rents of mortgaged land and proceeds from sale of land should be applied, stated.**

Where land was sold for notes maturing in succession a year apart, with a deed of trust securing the notes, and mortgage on crops raised to secure the payment of current installments of interest and principal, the application

of rents collected by the payee of notes while in possession under deed of trust before sale, and also proceeds of sale of land, to certain of the notes was error, since rents should have been applied to the current installments of interest and principal, and any balance to any indebtedness in default for any previous year or years, and then the proceeds of the sale of the farm land under the deed of trust prorated to the balance of the entire debt.

**3. Payment ⬥41(1)—Payment by a debtor is applied according to intention of parties.**

As a general rule payments by a debtor will be applied according to the intention of the parties, where it can be ascertained.

**4. Mortgages ⬥199(4)—Proceeds of mortgaged property must be applied to mortgage debt.**

Payment from proceeds of mortgaged property must be applied to the mortgage debt, except where to do so would be inequitable.

**5. Mortgages ⬥199(4)—Neither party can make application of proceeds of mortgaged property under rule governing voluntary payments.**

Generally, a payment of indebtedness by sale of mortgaged property is an involuntary payment, as to which neither the debtor nor creditor has the right to make an application under the rules governing voluntary payments, but the application should usually be pro rata.

**6. Payment ⬥39(1)—Creditor must apply involuntary payments to all debts.**

A creditor has no right of appropriation of involuntary payments, but must apply them to the discharge of all the debts.

**7. Chattel mortgages ⬥144—First mortgage recorded has priority.**

Where a chattel mortgage on cotton raised on land was given January 1, and recorded March 13, a mortgage on the same cotton given January 8, and recorded January 9, in which the mortgagees had no notice of the prior mortgage, took precedence of it under Rev. St. art. 5655, but the prior mortgage could recover the value of any cotton received by the second mortgagee in excess of that called for by his mortgage.

**8. Chattel mortgages ⬥178(1)—Evidence that cotton was raised on mortgaged premises held sufficient to go to jury.**

In an action for converting cotton covered by a chattel mortgage, evidence that the cotton was raised on premises specified in the mortgage *held* sufficient to go to the jury.

**9. Estoppel ⬥68(2)—Mortgagee cannot claim cotton was raised on certain land and then deny it to defeat claim of another mortgagee.**

In an action by a prior mortgagee against subsequent mortgagee for converting cotton mortgaged, defendants could not establish their lien on the cotton as grown in 1913, the only crop on which they had a mortgage, and deny that the crop was raised on the premises in question in that year.

**10. Depositions ⬥56(2)—Exclusion of ex parte deposition held proper.**

In an action by a chattel mortgagee against the mortgagor and a subsequent mortgagee for converting cotton, an ex parte deposition of the mortgagor taken without notice to his codefendants, and an opportunity to cross the interrogatories, was not admissible for any purpose.

Appeal from Coleman County Court; S. J. Pieratt, Judge.

Action by J. Z. Miller, Jr., against A. F. White and others. From judgment for defendants, plaintiff appeals. Reversed and remanded.

Snodgrass & Dibrell, of Coleman, for appellant.

Baker & Weatherred, of Coleman, for appellees Weatherred.

BLAIR, J. Appellant sued appellee White to recover on notes Nos. 1 and 2, each for $100 due January 1, 1914 and 1915, respectively, being the first two of a series of 15 vendor's lien notes, aggregating $4,500, executed by White on January 1, 1913, payable to appellant Miller for the respective sums stated therein on January 1, 1914, and each January 1st thereafter until all were paid; also to recover the annual interest installments due on the whole series of 15 notes, due January 1, 1914 and 1915, respectively, each for $360; and also to establish as against White a chattel mortgage lien on seven bales of cotton alleged to have been raised in the year 1913 by said White on the lands described in the combination deed of trust and mortgage executed by him to appellant, to secure the payment of the said 15 vendor's lien notes; and sued W. W. Weatherred and J. M. Weatherred for the value of the seven bales of cotton, alleging that they and appellee White had converted it.

Appellee White, among other things, pleaded payment of the notes by reason of the fact that appellant had taken possession of the farm by virtue of his trust and mortgage lien, and had collected more than sufficient in rents to pay the notes in suit; and that after the institution of this suit appellant sold the lands or farm securing the 15 notes by the trustee under the deed of trust for the sum of $2,500, which was alleged to be more than sufficient to pay the notes in suit, and asked the court to apply such sums to the indebtedness in this suit, in full satisfaction thereof. Appellees Weatherred pleaded a prior mortgage on the cotton, and adopted or filed similar pleadings to White's pleadings. At the conclusion of the evidence the court, on motion of appellees, instructed a verdict for them; to which appellant excepted; and the case is now before us for a review of this action of the trial court.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It is evident from the briefs that the trial court based its instructed verdict upon the following three grounds: First, that the chattel mortgage relied upon by appellant did not cover the crop of cotton raised on the farm in question for the year 1913; second, that appellee White had the right to direct the proceeds of the rents collected by appellant while in possession of the farm under the deed of trust and mortgage to the payment of the notes in suit, and to apply the proceeds of the sale of the land under the deed of trust to the notes in suit to their full satisfaction; and, third, that the proof failed to show that the cotton in question was raised on the farm described in the mortgage during the year 1913. We think the trial court erred in each instance, requiring a reversal of this case.

[1] The chattel mortgage clause of the combination deed of trust and mortgage is in part as follows:

"To further secure the payment of the respective current installments of interest and principal of the above indebtedness as the same shall annually mature, and any part of the said indebtedness that shall be in default from previous year or years, all the cotton * * * grown on the property herein conveyed * * * is hereby hypothecated, mortgaged, pledged, sold, transferred and conveyed unto the said trustee * * * from year to year and during the full time the said indebtedness or any part thereof is outstanding and unpaid, and on default in the payment of any of the respective current installments of said indebtedness, the said trustee * * * is hereby authorized * * * to take possession of said products."

The "current installments of interest and principal" began to run and accrue on the date of the execution of the notes, January 1, 1913. On January 1, 1914, the money or loan represented by these notes had earned the sum of $360 as interest during the current year 1913, and at which time the principal on the first serial note was due under the terms of the loan contract. The term "current" as defined by the Century Dictionary, means, "running; moving; following; passing; present in its course, as the current month or year." Words and Phrases, vol. 2, p. 1790. See, also, cases there cited. Corpus Juris defines "current," when used as an adjective, as "running; circulatory; common; following; moving; popular; passing; or present in its course as the current month or year." 17 C. J. 408.

Our courts have accepted the above definitions of "current" in the following cases: First Nat. Bank v. Graham (Tex. App.) 22 S. W. 1101; Dempsey v. McKennell (Tex. Civ. App.) 23 S. W. 525. In these cases the courts construed and applied the provisions of article 16, § 28, of the Constitution, "No current wages for personal services shall ever be subject to garnishment," and article 218, R. S., which provides that "No current

wages for personal services shall be subject to garnishment," holding that the "proper construction to be placed * * * upon the term 'current wages' is that they are * * * compensation paid for personal services as are to be paid for periodically, or from time to time, as the services are rendered, or the work is performed—progresses. It is where the party hired, by rendering the service would be entitled to certain periodical payments." We can see no material distinction between "current wages," payable at certain periodical times or dates, and "current installments of interest and principal" on an indebtedness payable at certain periodical times or dates, in so far as each is qualified by the term "current." The year running, passing, current on its progress, is ordinarily the calendar year, unless the context shows a different intention. 17 C. J. 411; Notes and Cases, 54–57. See, also, Mitchell v. Western Casualty Ins. Co. (Tex. Civ. App.) 163 S. W. 630. It has also been held that "current year," relating to a lease, refers to the time of entry, unless the parties stipulate to the contrary. Words and Phrases, vol. 2, p. 1795, and cases there cited. As applied to taxes under statutory provision estimating expenditures, the words "current year" relate to the year in which the taxes are levied and collected. 17 C. J. 411, note 57, and cases cited.

The term "current" is used in the instant case as an adjective qualifying "installments of interest and principal," which are accruing from the inception of the loan contract. The language of the mortgage clearly covers the installments of interest and principal for the year 1913, which under the loan contract is the "passing, or present in its course," installment of interest and principal accruing in that year; and that the crop raised in said year is the one "running; moving; following; passing"; or is "present in its course" with the "respective current installments of interest and principal" for the year 1913. If the mortgage does not cover the current crop of 1913, it covers nothing, for by its terms it does not secure any future debt; but only secures the "respective current installments of interest and principal * * * as the same shall annually mature"; or any indebtedness "that shall be in default from previous year or years." It cannot be contended with any degree of reason that the parties did not intend that each and every crop raised after the execution of the mortgage was to secure the loan. No such construction can be placed upon the language used in the mortgage; but to the contrary, the plain import of the language is that the parties intended that the 1913 crop should secure the current or the "running, moving, passing, or present in its course" installment of interest and principal accruing during said year.

[2] The trial court also erred in applying the rents collected by appellant while in possession of the farm before its sale under the deed of trust, and also the proceeds of the sale of the land to the notes in suit, at the request of appellee White. Appellant held two separate and distinct securities for his debt, one the deed of trust on the farm lands in question, which secured all of the 15 serial notes executed by White; and the other a chattel mortgage on the crops raised on the farm, which secured the payment of the respective current installments of interest and principal as same annually matured on the 15 notes, and the defaulting indebtedness of any previous year or years. Equity and justice would require the court to apply the payments of rents to the satisfaction of the respective current installments of interest and principal as the same annually matured, and any balance to any indebtedness in default for any previous year or years; and then to prorate as to the balance of the entire debt the proceeds of the sale of the farm land under the deed of trust; otherwise appellant would be compelled by the application of payments to lose a part of his security without having his entire debt paid. Not only do equity and justice apply the proceeds of the rents on the farm to the respective current installments of interest and principal as the same annually matured, but the contract as set forth in the mortgage requires that such rents be so applied.

[3] It is the general rule that payments by a debtor will be applied according to the intention of the parties, where that intention can be ascertained. 30 Cyc. 1240, note 29; El Paso Bldg. & Loan Association v. Lane, 81 Tex. 369, 17 S. W. 77.

[4] It is also the general rule that payments made from the proceeds of mortgaged property must be applied to the payment of the mortgage debt, except where to do so would be inequitable. 30 Cyc. 1240, notes 72, 73 and 74, and cases cited; Keasler v. Wray (Tex. Civ. App.) 171 S. W. 534. It is evident that the parties to the mortgage intended that the crops for each year should stand security for the installment of interest and principal accruing during each year, and such being true, the proceeds of the mortgaged property for any specific year must be applied to the payment of the debt it secured. To apply them otherwise in this case would be inequitable to appellant, as it would force him to lose a part of his security without having his entire debt paid. The crop of 1913 only secured the installment of interest and principal accruing that year, there being no previous year or years in default. The crop of the year 1914 secured, first, the installment of interest and principal accruing during that year, with any balance to be applied on any default of interest and principal for the previous year; and

so on for the other years appellant held possession and rented the premises after appellee White had abandoned or surrendered them.

As to the proceeds of the sale of the real estate under the deed of trust, they should be applied pro rata to the entire debt after credit on the notes of the rents collected for each specific year as directed by the mortgage and rule above announced. Appellant attempted to apply by his notices of sale under the deed of trust and the trustee's deed the proceeds of this sale to notes Nos. 3 to 15, both inclusive, with any remainder to the notes in suit. This he was not entitled to do.

[5] It is a general rule that a payment of an indebtedness by the sale of mortgaged real property is an involuntary payment, as to which neither the debtor nor creditor has the right to make an application under the rules governing voluntary payments; but the application should be usually pro rata.

[6] Where payments are involuntary, the creditor has no right of appropriation, but must apply the money toward the discharge of all the debts in proportion. 30 Cyc. 1228; 21 Mechie's Digest, 1003; Blair v. Teel (Tex. Civ. App.) 152 S. W. 878; Orleans County Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775; Bond v. Armstrong, 88 Ind. 65; Sturgeon Sav. Bank v. Riggs, 72 Mo. App. 239.

[7] As to the priority of the mortgage of Weatherred and Son, the testimony shows that their mortgage was dated January 8, 1913, and filed for record January 9, 1913. Appellant's mortgage was dated January 1, 1913, acknowledged February 13, 1913, and filed for record on March 13, 1913. The Weatherreds testified that they had no notice of appellant's mortgage. Under the provisions of article 5655, R. S., appellees Weatherred had a prior mortgage to that of appellant on all the cotton raised on the farm in question during the year 1913, except three bales, to secure the note executed by White to them for $300, with interest at 10 per cent. from date until they received the cotton in settlement thereof, and to secure any indebtedness on account of White to them contracted prior to the date of notice or filing by appellant of his mortgage for record on March 13, 1913. Appellant would have the right to recover of the Weatherreds and White the value of the seven bales of cotton at the time they received same from White, in excess of their above-mentioned indebtedness against White, to be applied on the installment of interest in suit, accruing in 1913, and on note No. 1 in suit for the sum of $100 maturing January 1, 1914.

[8] The trial court also erred in instructing a verdict on the ground that the proof did not establish the fact that the cotton in question was raised on the farm in question in the year 1913. Since we are reversing the

case, we pretermit a detailed discussion of the facts; but suffice it to say that the proof was sufficient to go to the jury on this issue. Miller testified that White raised cotton on this farm in 1913; that he did not raise cotton on any other farm. The cotton in question was delivered by White to Weatherreds in the fall of 1913. Weatherreds pleaded that they had a prior lien on the cotton raised by White on the premises in question for the year 1913 only, and sought to defeat appellant's claim thereto by reason of such prior mortgage.

[9] Under such circumstances the proof is sufficient to go to the jury on this issue; and appellees Weatherred would not be heard to establish their lien on the crop of 1913, the only crop on which they had a mortgage, and at the same time deny that the crop was so raised on the premises in question for such year. Hart-Parr Co. v. Krizan & Maler (Tex. Civ. App.) 212 S. W. 835.

[10] The court did not err in excluding upon the objection of appellees Weatherred the ex parte deposition of appellee A. F. White. This deposition was taken without notice to appellees Weatherred and without their having an opportunity to cross the interrogatories, and is not admissible against them for any purpose. Veck v. Culbertson (Tex. Civ. App.) 57 S. W. 1114.

For the reasons above stated, the cause is reversed and remanded.